FILED IN THE
U.S. DISTRICT COURT
EASTERN DISTRICT OF WASHINGTON

Dec 13, 2024

SEAN F. McAVOY, CLERK

UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF WASHINGTON

| UNITED STATES OF AMERICA, | No. 1:24-CR-02017-MKD |
|---|---|
| Plaintiff, | ORDER GRANTING DEFENDANT'S MOTION TO DISMISS |
| v. | |
| JAYLEN MONTE LUCEI, | **ECF No. 27** |
| Defendant. | |

On November 25, 2024, the Court held a pretrial conference and heard argument on Defendant's Motion to Dismiss, ECF No. 27. ECF No. 31. AUSA Michael Murphy represented the United States. AFD Paul Shelton represented Defendant, who was present in custody.

Defendant moves to dismiss the Indictment, contending that the United States' theory of the case depends on a definition of "dangerous or deadly weapon" that is incorrect as a matter of law. ECF No. 27. The Court grants Defendant's motion and dismisses the Indictment.

ORDER – 1

**LEGAL STANDARD**

Under Fed. R. Crim. P. 12(b)(1), a party may "raise by pretrial motion any defense, objection, or request that the court can determine without a trial on the merits." "The court must decide every pretrial motion before trial unless it finds good cause to defer a ruling." Fed. R. Crim. P. 12(d). "A pretrial motion is generally 'capable of determination' before trial if it involves questions of law rather than fact." *United States v. Shortt Acct. Corp.*, 785 F.2d 1448, 1452 (9th Cir. 1986) (citations omitted). The Court "may make preliminary findings of fact necessary to decide the questions of law presented by pre-trial motions so long as the court's findings on the motion do not invade the province of the ultimate finder of fact." *Id.* (citation, quotation marks, and footnote omitted).

In the Ninth Circuit, a district court must decide a pretrial motion to dismiss the indictment where the key facts are undisputed and the defendant claims that these facts are insufficient as a matter of law to prove an essential element of the offense. *See United States v. Phillips*, 367 F.3d 846, 855 & n.25 (9th Cir. 2004) (noting that the district court was obligated to decide the motion to dismiss pretrial because it concerned a "pure issue of law"—whether the creek where the offenses occurred was a navigable water under the Clean Water Act, based on the undisputed facts about the creek's physical characteristics"); *see also United States v. Gonzalez-Brizuela*, No. 08-29, 2008 WL 4104167, at *1 (D. Or. Aug. 27, 2008);

ORDER – 2

*United States v. Carter*, 04-CR-5306, No. 2006 WL 997867, at *2 (E.D. Cal. Apr. 17, 2006); *cf. United States v. Martin*, No. CR 07-1205, 2009 WL 667299, at *2 (C.D. Cal. Mar. 10, 2009); *United States v. Guitard*, No. CR06-69, 2006 WL 1982777, at *2 (W.D. Wash. June 15, 2006). A majority of other Circuits share this view. *See, e.g.*, *United States v. Weaver*, 659 F.3d 353, 355 n.* (4th Cir. 2011) (collecting cases); *United States v. Yakou*, 428 F.3d 241, 247 (D.C. Cir. 2005) (noting that only the Eleventh Circuit takes a contrary view).

**DISCUSSION**

Defendant raises two grounds in his Motion to Dismiss: (1) that the Indictment was deficient because it failed to identify the "dangerous weapon" Defendant allegedly used—specifically, an air rifle;[1] and (2) that, based on the undisputed facts, Defendant did not use a deadly or dangerous weapon as a matter of law and therefore cannot be convicted of the offense charged in the Indictment. ECF No. 27. As the Court finds that the second ground warrants dismissal, it is not necessary to address the first ground.

---

[1] The parties have alternatively referred to this item as an air rifle, a BB gun, or a pellet gun. *See* ECF No. 27 at 7-8; ECF No. 29 at 3-4, 4 & n.1.

ORDER – 3

### A. Propriety of Rule 12 Determination

On March 12, 2024, Defendant was indicted for one count of assaulting, resisting, or impeding Yakima County Sheriff's Deputy Jordan Allen with a dangerous weapon, in violation of 18 U.S.C. § 111(a)(1), (b). ECF No. 1. These statutory subsections provide as follows:

> **(a) In general.**--Whoever--
> **(1)** forcibly assaults, resists, opposes, impedes, intimidates, or interferes with any person designated in section 1114 of this title while engaged in or on account of the performance of official duties . . .
>
> shall, where the acts in violation of this section constitute only simple assault, be fined under this title or imprisoned not more than one year, or both, and where such acts involve physical contact with the victim of that assault or the intent to commit another felony, be fined under this title or imprisoned not more than 8 years, or both.
>
> **(b) Enhanced penalty.**--Whoever, in the commission of any acts described in subsection (a), ***uses a deadly or dangerous weapon*** (including a weapon intended to cause death or danger but that fails to do so by reason of a defective component) or inflicts bodily injury, shall be fined under this title or imprisoned not more than 20 years, or both.

18 U.S.C. § 111(a)(1), (b) (emphasis added).

Defendant's argument concerns the "deadly or dangerous weapon" element of Section 111(b). ECF No. 27 at 1. Section 111(b) does not define "deadly or dangerous weapon." "Courts interpreting [Section] 111 have adopted the commonly accepted definition of a deadly or dangerous weapon as stated in the

ORDER – 4

1  instructions: 'any object which, as used or attempted to be used, may endanger the
2  life of or inflict great bodily harm on a person.'" *United States v. Sanchez*, 914
3  F.2d 1355, 1358-59 (9th Cir. 1990) (citing *United States v. Aceves-Rosales*, 832
4  F.2d 1155, 1157 (9th Cir. 1987) (per curiam), *cert. denied*, 484 U.S. 1077 (1988));
5  *United States v. Moore*, 846 F.2d 1163, 1166 (8th Cir. 1988); *United States v. Bey*,
6  667 F.2d 7, 11 (5th Cir. 1982); *United States v. Loman*, 551 F.2d 164, 169 (7th Cir.
7  1977), *cert denied*, 433 U.S. 912 (1977)).  In accordance with *Sanchez*, the Ninth
8  Circuit's model instruction for a Section 111(b) offense provides the following
9  definition: "A [*specify weapon*] is a deadly or dangerous weapon if it is used in a
10 way that is capable of causing death or serious bodily injury." 9th Cir. Model
11 Crim. Jury Instr. No. 8.2 (2022 ed., updated through June 2024).

12     At the motion hearing, the United States stipulated that the air rifle itself
13 could not have caused death or serious bodily injury to Deputy Allen in the manner
14 Defendant used it—i.e., that Defendant did not use a deadly or dangerous weapon
15 as defined in *Sanchez*.  ECF No. 31; *see also* ECF No. 29 at 7.  The United States
16 explained that it intends to prove the "deadly or dangerous weapon" element of
17 Section 111(b) by establishing that the air rifle meets the definition of "a dangerous

ORDER – 5

weapon" applicable to bank robberies.[2] ECF No. 31; *see also* ECF No. 29 at 7 (citing 9th Cir. Model Crim. Jury. Instr. No. 9.1; *United States v. Pike*, 473 F.3d 1053, 1060 (9th Cir. 2007)).

The parties do not dispute the material facts underlying Defendant's "use" of the air rifle: Defendant pointed the air rifle in Deputy Allen's direction, without firing or pumping the air rifle to prepare it for firing, while Deputy Allen was about 65 yards away and behind or inside his police vehicle at all times. *See* ECF No. 31; ECF No. 29 at 3; ECF No. 27 at 2. But given the United States' stipulation that Defendant did not use a deadly or dangerous weapon under the *Sanchez* definition, it is unnecessary to delve into specific facts. Rather, the sole question before the Court is whether the definition of "dangerous weapon" in the bank

---

[2] 18 U.S.C. § 2113(d) provides for enhanced penalties for a person who "assaults any person, or puts in jeopardy the life of any person by *the use of a dangerous weapon or device*" in committing a bank robbery offense defined in subsections (a) and (b). (emphasis added). The Ninth Circuit's corresponding model instruction provides the following definition: "A weapon or device is dangerous if it is something that creates a greater apprehension in the victim and increases the likelihood that police or bystanders would react using deadly force." 9th Cir. Model Jury Inst. No. 9.1.

ORDER – 6

robbery context may also suffice to meet the "deadly or dangerous weapon" element of a Section 111(b) offense. The Court concludes that Defendant's Motion to Dismiss concerns a pure issue of law that must be decided before trial.[3] *See Phillips*, 367 F.3d at 855 & n.25.

### B. "Deadly or Dangerous Weapon" Definition

The United States urges the Court to "conclude that, regardless [of] whether the air rifle could inflict death or serious bodily injury as used when pointed at Deputy Allen, it could cause a reasonable apprehension of immediate bodily harm and constituted a threat to inflict injury and an apparent present ability to do so." ECF No. 29 at 8-9. In other words, the United States argues that an air rifle should suffice as a deadly or dangerous weapon so long as it was reasonable for an onlooker to believe that the air rifle was an actual rifle. It contends that the

---

[3] Put differently, there is no good cause to defer ruling on this issue where it would need to be determined to prepare the preliminary jury instruction on the elements of the offense. If the Court solely instructed the jury using the "deadly or dangerous weapon" definition provided in Model Instruction No. 8.2, the United States stipulates that no conviction could result. Therefore, the United States would need to request a modified jury instruction that included the definition of "dangerous weapon" used in the bank robbery context.

ORDER – 7

*Sanchez* definition should be modified to include the definition of "dangerous weapon" used for bank robbery offenses because the latter recognizes the inherent danger of an "apparent firearm." *Id.* at 7.

The bank robbery statute provides enhanced penalties for a person who "[1] assaults any person, or [2] *puts in jeopardy the life of any person* by the use of a dangerous weapon or device" in committing a bank robbery offense defined in subsections (a) and (b). 18 U.S.C. § 2113(d) (emphasis added). In *McLaughlin v. United States*, 476 U.S. 16 (1986), the Supreme Court held that the defendant's display of an unloaded handgun in a bank robbery sufficed for the Section 2113(d) enhancement on three bases:

> First, a gun is an article that is typically and characteristically dangerous; the use for which it is manufactured and sold is a dangerous one, and the law reasonably may presume that such an article is always dangerous even though it may not be armed at a particular time or place. In addition, the display of a gun instills fear in the average citizen; as a consequence, it creates an immediate danger that a violent response will ensue. Finally, a gun can cause harm when used as a bludgeon.

*Id.* at 18 (footnote omitted). The Court reasoned that the legislative history of Section 2113 demonstrated "that Congress regarded incitement of fear as sufficient to characterize an apparently dangerous article (such as a wooden gun) as 'dangerous' within the meaning of the statute." *Id.* at 18 n.3.

ORDER – 8

As the Ninth Circuit explained, *McLaughlin* "recognizes that the dangerousness of a device used in a bank robbery is not simply a function if its potential to injure people directly[]" but also the "dangerousness result[ing] from the greater burdens that it imposes upon victims and law enforcement officers. *United States v. Martinez-Jimenez*, 864 F.2d 664, 666 (9th Cir. 1989). In the bank robbery context, the "display" of a firearm, even if unloaded or fake, "creates an immediate danger that a violent response will ensue[,]" which "put[s] in jeopardy the lives of the teller and other persons at the robbery scene" and therefore "place[s] the victim in an actual, objective state of danger[.]" *United States v. Buck*, 23 F.4th 919, 928 n.2 (9th Cir. 2022) (quoting *McLaughlin*, 476 U.S. at 17-18; *United States v. Benson*, 918 F.2d 1, 4 (1st Cir. 1990); *United States v. Coulter*, 474 F.2d 1004, 1005 (9th Cir. 1973)) (quotation marks omitted).

Only two Circuits have applied the reasoning in *McLaughlin* to the definition of "a deadly or dangerous weapon" under Section 111(b). In *United States v. Gometz*, the Seventh Circuit applied *McLaughlin* to conclude that the defendant had used a dangerous weapon in relation to his Section 111 and 18 U.S.C. § 1791 (inmate in possession of an object that may be used as a weapon)

ORDER – 9

offenses when he attempted to shoot a prison guard with a homemade "zip gun,"[4] which happened to misfire because of faulty wiring. 879 F.2d 256, 258-59 (7th Cir. 1989). The Fourth Circuit applied *McLaughlin* to conclude that a "dysfunctional bomb" constructed out of "[a] combination of wires and Bic lighters" was *not* a deadly or dangerous weapon under Section 111(b) because it was "not a characteristically dangerous weapon," "cannot be said to instill fear in the average citizen," and "could not be used to bludgeon or seriously injure its recipient." *United States v. Hamrick*, 995 F.2d 1267, 1272 (4th Cir. 1993) (*Hamrick I*). This opinion was subsequently vacated on rehearing en banc, and the en banc court reached the opposite conclusion—that the dysfunctional bomb was a deadly or dangerous weapon under Section 111(b) under the *McLaughlin* analysis, and that there was sufficient evidence the defendant "intended the bomb to explode and kill a United States Attorney." *United States v. Hamrick* (*Hamrick II*), 43 F.3d 877, 881-85 (4th Cir. 1995) (en banc). Of note, at the time *Gometz* and *Hamrick I* and *II* were decided, Section 111(b) did not include the parenthetical clause, "(including a weapon *intended to cause death or danger* but that fails to do so *by*

---

[4] The zip gun was designed to "expel[] metal fragments through the barrel" by use of a detonator, and would have done so but for the faulty wiring. *Gometz*, 879 F.2d at 258 n.1.

ORDER – 10

*reason of a defective component*)" (emphases added)—this was added in 1996, and the legislative history suggests this addition was meant as "a clarification . . . to prevent other courts from following" *Hamrick I*. *See* 141 Cong. Rec. S7718-02, 1995 WL 334821 (daily ed. June 6, 1995) (statement of Sen. Thompson).

No other Circuit has extended the reasoning of *McLaughlin* to Section 111. The Ninth Circuit has continued to use the *Sanchez* definition of a deadly or dangerous weapon after *Gometz*, *Hamrick I*, and *Hamrick II* were decided[5] and has relied on that definition in concluding that Section 111(b) offenses are crimes of violence. *See United States v. Juvenile Female*, 566 F.3d 943, 947 (9th Cir. 2009).

---

[5] The *Sanchez* definition may well have encompassed the zip gun in *Gometz* and the dysfunctional bomb in *Hamrick I*, without need for analogy to the bank robbery statute and *McLaughlin*—in each, the defendants had *attempted* to use each item in a manner that probably would have been capable of producing death or great bodily injury, though their attempts were thwarted by defective components. *See Gometz*, 879 F.2d at 259 (finding that the zip gun sufficed as "an object designed or *intended to be used as a weapon*" for the Section 1791 offense, then reasoning that the same conclusion should apply to the Section 111 conviction (emphasis in *Gometz*)); *Hamrick I*, 995 F.2d at 1268, 1273 (affirming the defendant's other conviction for attempted murder).

ORDER – 11

At present, the *Sanchez* definition includes objects which, as used or attempted to be used, are capable of causing death or great bodily harm on a person, and the 1996 amendment specifically includes objects that were intended to be capable of causing death or bodily harm on a person but were incapable of such due to a defective component.  This definition does not include objects that, in the manner used or attempted to be used, were incapable of causing death or bodily harm (albeit not because of a defective component) but which others reasonably mistook for a weapon capable of causing death or serious bodily injury.  The Court declines to expand the *Sanchez* definition in the manner requested by the United States.

## CONCLUSION

Given the lack of any material disputed facts and the United States' stipulation, the Court is obligated to decide Defendant's Motion to Dismiss before trial.  The United States stipulates that the facts of this case cannot meet the definition of "deadly or dangerous weapon" binding in this Circuit, which is a necessary element of the only offense charged in the Indictment.

The Court does not take lightly the impact that this alleged (but undisputed) conduct likely had upon the Deputy, and as admitted by defense counsel at the hearing, the undisputed conduct undoubtedly constitutes *a* criminal offense.

However, it does not constitute the specific offense charged.  The Court grants Defendant's Motion to Dismiss.

Accordingly, **IT IS HEREBY ORDERED:**

1. Defendant's Motion to Dismiss, **ECF No. 27**, is **GRANTED**.

2. The Indictment dated March 12, 2024, **ECF No. 1**, is **DISMISSED**.

3. The trial date and pretrial conference dates are **STRICKEN**.

4. Defendant shall be **RELEASED** from custody.

**IT IS SO ORDERED.**  The Clerk's Office is directed to enter this Order; provide copies to all counsel, the U.S. Probation Office, and the U.S. Marshals Service; and **CLOSE** the file.

**DATED** December 13, 2024.

*s/Mary K. Dimke*
MARY K. DIMKE
UNITED STATES DISTRICT JUDGE

ORDER – 13